**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **THE CINCINNATI INSURANCE COMPANY, Plaintiff,** | § § § | |
| **v.** | § § | |
| **TREVOR RIVERA, Defendant.** | § § § § § § | **Civil Action No. 4:26-cv-00126** |

# PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff, THE CINCINNATI INSURANCE COMPANY ("Cincinnati"), by and through its counsel of record, and files this, its Original Complaint for Declaratory Judgment Relief against Defendant Trevor Rivera ("Rivera" or "Defendant") pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 *et seq.* and Rule 57 of the Federal Rules of Civil Procedure. Specifically, Cincinnati seeks a declaration regarding its coverage obligations, if any, to Defendant Trevor Rivera in connection with claims asserted in an underlying state-court lawsuit styled *Hue Nguyen and Nghia Vo v. Euless Pizza, L.P., et al.*, Cause No. CC-21-05448-B, heard in the County Court at Law No. 2, Dallas County, Texas (the "Underlying Lawsuit").

Cincinnati previously filed a broader declaratory judgment action in this Court addressing coverage issues related to the Underlying Lawsuit. That action has been fully resolved as to all other defendants through a combination of stipulated dismissals of no coverage and dismissal with prejudice and default judgments. Trevor Rivera is the sole remaining party for whom no final coverage determination has been entered.

## I.
## THE PARTIES

1. Plaintiff Cincinnati is a foreign insurance company duly organized and existing under the laws of the State of Ohio, with its principal place of business in the State of Ohio, and doing business in the State of Texas. Cincinnati is a citizen of the State of Ohio.

2. Defendant Trevor Rivera is an individual residing in the State of Texas, and, upon information and belief, is a citizen of the State of Texas. He may be served with process at 602 Janann Street, Euless, Texas 76039 or wherever else he may be found. Cincinnati requests issuance of citation at this time.

## II.
## JURISDICTION AND VENUE

13. This declaratory judgment action is brought under 28 U.S.C., §§ 2201 *et seq.* and Rule 57 of the Federal Rules of Civil Procedure, for the purpose of determining a question of actual controversy between the parties, as hereinafter more fully set forth. The jurisdiction of this Court is proper under 28 U.S.C. § 1332, based upon the diversity of citizenship between the Plaintiff and the Defendant, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

14. Venue is properly maintained in this Court pursuant to 28 U.S.C. § 1391(b)(1)(2), because Defendant resides in Texas, in this judicial district, and where a substantial part of the events or omissions giving rise to this lawsuit took place.

## III.
## FACTUAL BACKGROUND

15. This declaratory judgment action arises out of claims asserted by Hue Nguyen and Nghia Vo (collectively, the "Underlying Plaintiffs") in a state-court lawsuit styled *Hue Nguyen*

*and Nghia Vo v. Euless Pizza, L.P., et al.*, Cause No. CC-21-05448-B, brought in the County Court at Law No. 2, Dallas County, Texas (the "Underlying Lawsuit").

16. On December 13, 2021, the Underlying Plaintiffs filed their Original Petition and Jury Demand against Euless Pizza, L.P., Story Glen, Inc., SF GP Management, LLC, and Trevor Rivera ("Rivera"). Thereafter, on May 30, 2023, the Underlying Plaintiffs filed a First Amended Petition adding Ifratman, LLC as a defendant. On September 22, 2023, the Underlying Plaintiffs filed their Second Amended Original Petition (the "Second Amended Petition") against Rivera, various i Fratelli–related entities, and individual owners and managers associated with those entities (collectively, the "i Fratelli Defendants"). A copy of the Second Amended Petition is attached hereto as **Exhibit A** and incorporated herein by reference. In addition, attached hereto as **Exhibit B** and incorporated herein by reference is a copy of the court docket for the Underlying Lawsuit, reflecting that the Second Amended Petition is the last live pleading in the Underlying Lawsuit as of February 5, 2026.

17. In the Second Amended Petition, the Underlying Plaintiffs allege that they sustained bodily injuries and damages arising out of a motor vehicle accident that occurred on or about September 25, 2021, at or near the intersection of Gateway Boulevard and Centurion Boulevard in Euless, Texas (the "Accident"). The Accident allegedly involved a 1999 black Honda Civic (VIN No. 2HGEH2343NH551133) operated by Rivera and owned by Mallory Ann Rivera and Ceasar Rivera, and a 2016 black Honda HR-V (VIN No. 3CZRU6H75GM734313) owned and operated by Underlying Plaintiff Nghia Vo, with Underlying Plaintiff Hue Nguyen as a passenger.

18. The Underlying Plaintiffs assert claims for negligence, gross negligence, and vicarious liability based on Rivera's alleged conduct. They allege that Rivera was negligently traveling at a high rate of speed while delivering an i Fratelli pizza and acting in the course and

scope of his alleged employment with one or more of the i Fratelli Defendants. The Underlying Plaintiffs further allege that the i Fratelli Defendants are liable under theories of respondeat superior, joint enterprise, negligent hiring, training, supervision, and retention, and that certain individual defendants are liable based on alleged ownership, control, or management of the i Fratelli entities.

19. The Second Amended Petition further alleges that the i Fratelli Defendants attempted to conceal Rivera's employment status by submitting allegedly back-dated termination documentation and that such conduct supports the Underlying Plaintiffs' claims for exemplary damages. The Underlying Plaintiffs sought damages in excess of $1,000,000, including past and future medical expenses, pain and suffering, mental anguish, impairment, disfigurement, loss of enjoyment of life, loss of household services, medical monitoring, exemplary damages, costs, and interest.

20. Cincinnati previously filed a declaratory judgment action in this Court addressing its coverage obligations, if any, arising from the Underlying Lawsuit. That action was fully resolved as to all other parties through a joint stipulation of no coverage and dismissal with prejudice and through the entry of default judgments. Trevor Rivera was dismissed from the prior declaratory judgment action without prejudice pursuant to Federal Rule of Civil Procedure 4(m) due to lack of service and, as a result, has not obtained a judicial determination regarding coverage under the Policies.

## IV.
## INSURANCE PROVISIONS MADE THE BASIS OF THIS ACTION

20. Cincinnati issued as new business a Commercial Package Policy, bearing policy number ECP 051 33 53 (for all coverages except automobile or garage) and policy no. EBA 051

33 53 (for automobile and garage) ("Auto Policy") (collectively, "the Policy") to the i Fratelli entities for the period November 24, 2018 to November 24, 2021, except that the Auto Policy was initially issued for the policy period November 24, 2018 to November 24, 2019, and subsequently renewed on an annual basis until November 24, 2021. The Policy includes a commercial general liability portion ("CGL Policy"), the Auto Policy, as well as an excess liability portion ("Excess Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit C** and incorporated herein by reference.

21. The terms and conditions of the CGL Policy having relevance to this declaratory judgment action are as follows.

**********

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**[1]

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V – DEFINITIONS.**

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily

[1] GA 101 TX 09 10

injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I – COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**; or medical expenses under **SECTION I – COVERAGES, COVERAGE C. MEDICAL PAYMENTS.**

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

**c.** "Bodily injury" or "property damage" which:

**(1)** Occurs during the "coverage term"; and

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

Includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

**d.** You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

**(3)** First observes, or first observed, the "bodily injury" or "property damage";

**(4)** Becomes aware, or become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

**(5)** Becomes aware, or become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

. . .

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, remises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

. . .

**SECTION V – DEFINITIONS**

. . .

**3.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**6.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication, provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement to which we agree.

**. . .**

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**. . .**

**********

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CinciPak™**
**COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT**[2]

This endorsement modifies insurance provided under the following:

[2] GCP 203 09 17

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

. . .

**12. Bodily Injury Redefined**

**Section V – Definitions, 4.** "Bodily injury" is replaced by the following:

**4.** "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

**********

*See* **Exhibit C** attached hereto.

22. The terms and conditions of the Auto Policy having relevance to this declaratory judgment action are as follows:

**THE CINCINNATI INSURANCE COMPANY**
**CINCINNATI, OHIO**

**BUSINESS AUTO COVERAGE PART DECLARATIONS**[3]

**ITEM ONE**
Attached to and forming part of POLICY NUMBER: EBA 051 33 53
Named Insured is the same as it appears in the Common Policy Declarations.

**ITEM TWO SCHEDULE OF COVERAGES AND COVERED AUTOS**
This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage | LIMIT<br>THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|

[3] AA 505 03 06

| | | | |
|---|---|---|---|
| | Form shows which autos are covered autos) | | |
| LIABILITY | **7** | $1,000,000 | INCL |

. . .

**********

**AUTOMOBILE SCHEDULE[4]**

**ITEM THREE**

Attached to and forming a part of Policy Number EBA 051 33 53, effective 11-24-2020

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

POLICY LIMITS
State: TX

Bodily Injury: 1,000,000 CSL Property Damage: INCLUDED
UM/UIM: 1,000,000 UMPD INCLUDED
UMPD DED: 250 PIP: 2,500

(*UMPD APPLIES)

| Veh. No. | Vehicle Information |
|---|---|
| 1 | 2007 FORD ECONOLINE S/N 1FTNS24L77DB20154 Class: 03199 Territory 002<br>OTC-COMP DED: 1,000 Coll Ded: 1,000 COST NEW: 25,405 ZIP CODE: 75038 |

| BI | PD | MP | OTC | COLL | UM* |
|---|---|---|---|---|---|
| 2,106 | INCL | N/A | 148 | 228 | 155 |

| PIP | MVCPA | TOTAL |
|---|---|---|
| 8 | 4 | 2,649 |

2 2013 CHEVROLET ECONOLINE S/N 1GCSHAF42D1159460 Class: 03199 Territory 002

[4] AA 4183 02 06

OTC-COMP DED: 1,000 Coll Ded: 1,000 COST NEW: 30,800 ZIP CODE: 75038

| BI | PD | MP | OTC | COLL | UM* |
|---|---|---|---|---|---|
| 2,358 | INCL | N/A | 258 | 413 | 155 |

| PIP | MVCPA | TOTAL |
|---|---|---|
| 8 | 4 | 3,196 |

3 2018 FORD TRANSIT S/N 1FTBW2YM1JKA47215 Class: 03199 Territory 002

OTC-COMP DED: 1,000 Coll Ded: 1,000 COST NEW: 45,000 ZIP CODE: 75038

| BI | PD | MP | OTC | COLL | UM* |
|---|---|---|---|---|---|
| 3,043 | INCL | N/A | 384 | 901 | 155 |

| PIP | MVCPA | TOTAL |
|---|---|---|
| 8 | 4 | 4,495 |

4 2003 CHEVROLET TAHOE S/N 1GNEC13Z83R267522 Class: 03199 Territory 002

OTC-COMP DED: 1,000 Coll Ded: 1,000 COST NEW: 37,451 ZIP CODE: 75038

| BI | PD | MP | OTC | COLL | UM* |
|---|---|---|---|---|---|
| 2,233 | INCL | N/A | 173 | 292 | 155 |

| PIP | MVCPA | TOTAL |
|---|---|---|
| 8 | 4 | 2,865 |

BUSINESS AUTO EXPANDED ENDORSEMENT Class: Territory

OTC-COMP DED: N/A Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| | | | 198 | | | 198 |

SYMBOLS:

BI — Bodily Injury
PD — Property Damage
MP — Medical Payments
OTC — Other Than Collision (ACV Coverage Applies unless Stated Amount Value is indicated)
CAC — Combined Additional Coverage
FT&S — Fire, Theft, and Supplemental
SPEC — Specified Perils
COLL — Collision
UM — Uninsured Motorists
UIM— Underinsured Motorists
PIP— Personal Injury Protection
T&L— Towing and Labor Costs
RR— Rental Reimbursement

**MVCPA –TX Motor Veh Crime Prev Fee**
**UMPD – Uninsured Motorists PD**

**********

**BUSINESS AUTO COVERAGE FORM[5]**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer **to SECTION V - DEFINITIONS**.

**SECTION I - COVERED AUTOS**

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**
**SYMBOL DESCRIPTION**

. . .

**7** = SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE).

. . .

**SECTION II - LIABILITY COVERAGE**

[5] AA 101 03 06

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

. . .

**SECTION V – DEFINITIONS**

**A.** "Accident includes continuous or exposure to the same conditions "bodily injury" or "property damage'.

**B.** "Auto" means

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**. . .**

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

. . .

**J.** "Loss" means direct and accidental loss or damage.

. . .

**********

23. The terms and conditions of the Excess Policy having relevance to this declaratory judgment action are as follows:

**********

**EXCESS LIABILITY COVERAGE FORM**[6]

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties, and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION IV - DEFINITIONS**.

**SECTION I - COVERAGE**

**A. Insuring Agreement**

**1.** We will pay those sums the "insured" is legally obligated to pay as damages for that part of "loss" to which this insurance applies in excess of "underlying insurance".

**2.** This insurance applies to injury or offense only if:

**a.** The injury or offense takes place during the policy period shown in the Declarations; and

**b.** Prior to the "coverage term" in which the injury or offense takes place, you did not know, per Paragraph **4.** below, that the injury or offense had taken place or begun to take place, in whole or in part.

**3.** Injury or offense which:

**a.** Takes place during the "coverage term"; and

[6] XS 101 UM 12 04

b. Was not, prior to the "coverage term", known by you, per Paragraph **4.** below, to have taken place;

includes any continuation, change or resumption of that injury or offense after the end of the "coverage term" in which it first became known by you.

**4.** You will be deemed to know that injury or offense has taken place at the earliest time when any "authorized representative":

**a.** Reports all, or any part of the injury or offense to us or any other insurer;

b. Receives a written or verbal demand or claim for damages because of the injury or offense;

**c.** First observes, or reasonably should have first observed, the injury or offense;

**d.** Becomes aware, or reasonably should have become aware, by any means, other than as described in c. above, that injury or offense has taken place or begun to take place; or

**e.** Becomes aware, or reasonably should have become aware, of a condition from which injury or offense is substantially certain to take place.

**5.** The terms, definitions, conditions, limitations and exclusions of the "underlying insurance" are made a part of this Coverage Part, except for:

**a.** Any term or condition relating to:

**(1)** Any duty to investigate or defend;

**(2)** The limits of insurance;

**(3)** The payment of expenses;

**(4)** The premium;

**(5)** Cancellation or non-renewal;

**(6)** Any renewal agreement;

**(7)** The policy period; or

**b.** Any other provision that is not consistent with this Coverage Part;

in which case the terms, definitions, conditions, limitations and exclusions of this Coverage Part will apply.

6. The amount we will pay is limited as described in **SECTION II - LIMITS OF INSURANCE**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SECTION I - COVERAGE, C. Defense and Supplementary Payments**.

**B. Exclusions**

This insurance does not apply to:

. . .

6. **Underlying Insurance**

   Any liability not covered by "underlying insurance" for any reason other than the exhaustion of an aggregate limit of insurance by payment of claims.

. . .

**C. Defense and Supplementary Payments**

1. We will have the right and duty to defend the "insured" against any suit seeking damages because of injury or damage to which this insurance applies when the applicable limits of "underlying insurance" and any other insurance have been exhausted by payment of claims. We will have no duty to defend the "insured" against any suit seeking damages for injury or damage to which this insurance does not apply. We may, at our discretion, investigate any occurrence and settle any claim or suit that may result.

   Our right and duty to defend ends when the applicable Limits of Insurance, as stated in the Declarations, has been exhausted by payment of claims.

2. We have no duty to investigate, settle or defend any claim or suit other than those circumstances described in Paragraph **C.1.** However, we do have the right to participate in the investigation, settlement or defense of any claim or suit to which this insurance applies. If we exercise this right, we will do so at our expense.

3. If there is no underlying insurer or other insurance obligated to do so, we will pay the following when we provide a defense:

   **a.** All expenses we incur.

   **b.** The cost of bail bonds up to $3,000. We do not have to furnish these bonds.

**c.** The cost of bonds to appeal a judgment or award in any claim or suit we defend and the cost of bonds to release attachments, but only for bond amounts within the applicable Limits of Insurance. We do not have to furnish these bonds.

**d.** Reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or suit, including the actual loss of earnings.

**e.** All costs taxed against the "insured" in the suit.

**4.** If there is no underlying insurer obligated to do so, we will pay the following expenses for a "loss" to which this insurance applies:

**a.** Prejudgment interest awarded against the "insured" on that part of the judgment we become obligated to pay and which falls within the applicable Limit of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**b.** All interest awarded against the "insured" on the full amount of any judgment that accrues:

**(1)** After entry of the judgment; and

**(2)** Before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**5.** If we are prevented by law or otherwise from carrying out any of the provisions of **SECTION I - COVERAGE, C. Defense and Supplementary Payments**, we will pay any expense incurred with our written consent.

These payments will not reduce the Limits of Insurance provided by this Coverage Part when defense or supplementary payments provided by the "underlying insurance" do not reduce their Limits of Insurance. However, when defense or supplementary payments provided by the "underlying insurance" reduce their Limits of Insurance then such expense payments paid by us will reduce the Limits of Insurance provided by this Coverage Part.

. . .

**SECTION IV - DEFINITIONS**

. . .

**2.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof, if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

. . .

**5.** "Insured" means the Named Insured shown in the Declarations and any person or organization qualifying as such in the "underlying insurance".

**6.** "Loss" means those sums paid as damages in the settlement or satisfaction of a claim to which this insurance applies for which the "insured" is legally liable, after making deductions for all recoveries, salvages and other insurance, whether collectible or not, other than the "underlying insurance" and excess insurance written specifically to be excess over this insurance. "Loss" does not include investigation, adjustment, defense or appeal costs and expenses, even though "underlying insurance" may provide insurance for such costs and expenses.

. . .

**8.** "Underlying insurance" means the policy(ies) and limits of insurance shown in the Schedule of Underlying Insurance, including any renewal or replacement of such policy(ies), which provide the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this Coverage Part.

**********

*See* **Exhibit C** attached hereto.

## V.
## BASIS FOR DECLARATORY RELIEF

24. There is a genuine controversy between the parties herein that would be resolved by this declaratory judgment. Cincinnati contends that there is no coverage afforded to Rivera

under the CGL Policy for the Lawsuit based on the allegations asserted in the Second Amended Petition filed in the Underlying Lawsuit and the express and unambiguous terms of the CGL Policy. Specifically, Cincinnati relies upon the Air, Auto, or Watercraft exclusion ("Auto Exclusion"), which precludes coverage for any damages alleged and/or ultimately awarded against the Rivera in the Lawsuit for "bodily injury" damages arising out of the ownership, maintenance, use or entrustment to others of any auto operated by or rented or loaned to any insured. The allegations in the Second Amended Petition trigger the Auto Exclusion. Moreover, the same facts that negate Cincinnati's duty to defend Rivera under the CGL Policy likewise negate Cincinnati's duty to indemnify Rivera under the CGL Policy.

25. Furthermore, Cincinnati contends that there is no coverage afforded to Rivera under the Auto Policy based on the allegations in the Second Amended Petition filed in the Underlying Lawsuit and the express and unambiguous terms of the Auto Policy. Specifically, Cincinnati relies upon the Auto Policy's terms and conditions, which *restrict* coverage to damages because of "bodily injury" or "property damage" cause by an "accident" that resulted from the ownership, maintenance, or use of a *covered* "auto." The autos alleged to be involved in the Accident, per the Second Amended Petition, are not covered autos under the Auto Policy inasmuch as said autos are not specifically described autos on the Auto Policy. Moreover, the same facts that negate Cincinnati's duty to defend Rivera under the Auto Policy likewise negate Cincinnati's duty to indemnify Rivera under the Auto Policy.

26. Cincinnati also seeks a declaration from this Court that it owes no duty to indemnify Rivera under the Excess Policy for any damages that may be awarded against Rivera in the Underlying Lawsuit. More specifically, the Excess Policy follows form to the CGL and Auto Policies, and, therefore, for the same reasons discussed above with respect to the CGL and Auto

Policies, and also based on the terms of the "Underlying Insurance" exclusion under the Excess Policy, Cincinnati does not have a duty to indemnify Rivera under the Excess Policy for any damages that may be awarded against them in the Underlying Lawsuit.

## VI.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, THE CINCINNATI INSURANCE COMPANY prays that this Court issue declarations that:

(1) Cincinnati does not owe a duty to defend Rivera under the CGL Policy or the Auto Policy in connection with the Underlying Lawsuit;

(2) Cincinnati does not owe a duty to indemnify Rivera under the CGL Policy, the Auto Policy, or the Excess Policy for any damages awarded against him in the Underlying Lawsuit; and

(3) for such other and further relief, general or specific, legal or equitable, to which Cincinnati may show itself to be justly entitled.

Respectfully Submitted,

**COX P.L.L.C.**

/s/ Lindsey N. Hardy
**Lindsey N. Hardy**
Attorney-in-Charge
Texas Bar No. 24053689
lhardy@coxpllc.com
**Jennifer Kelley**
Texas Bar No. 24058695
jkelley@coxpllc.com
**Mariam Shakir**
Texas Bar No. 24108826
mshakir@coxpllc.com
Cox P.L.L.C.
8144 Walnut Hill Ln, STE 1090
Dallas, Texas 75231
Telephone: (469) 504-3931
Facsimile: (469) 340-1884

**ATTORNEYS FOR PLAINTIFF,**
**THE CINCINNATI INSURANCE COMPANY**